IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL MARSH,                          )        Case No. 4:14CV2206
                                        )
                Petitioner,             )
                                        )        JUDGE JAMES G. CARR
        v.                              )        Magistrate Judge George J. Limbert
                                        )
MARGARET  BRADSHAW, Warden,             )
                                        )        **REPORT AND RECOMMENDATION**
                Respondent.             )        **OF MAGISTRATE JUDGE**


        This matter is before the undersigned on a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254, filed, pro se, by Petitioner Michael Marsh ("Petitioner") on October 3, 2014.

ECF Dkt. # 1.  Petitioner seeks relief from his conviction and sentence for robbery entered by the

Mahoning County, Ohio, Court of Common Pleas.  *Id.*  On December 23, 2014, Respondent,

Margaret Bradshaw ("Respondent"), Warden of the Richland Correctional Institution in

Mansfield, Ohio, where Petitioner is currently housed, filed a return of writ.[1]  ECF Dkt. # 8.  On

January 30, 2015, Petitioner, pro se, filed an "In Limine Traverse Brief."  ECF Dkt. #12.

        For the following reasons, the undersigned RECOMMENDS that the Court DISMISS

Petitioner's federal habeas corpus petition in its entirety with prejudice.

## I.  *FACTUAL AND PROCEDURAL BACKGROUND*

### A.  *Factual History*

The Seventh District Court of Appeals of Ohio set forth the following facts of this case

---

        [1] Maggie Bradshaw replaces as Respondent Michele Miller, the warden of Belmont
Correctional Institution in St. Clairsville, Ohio, where Petitioner was housed when he filed his
petition.  ECF Dkt. # 1.

on direct appeal.  These binding factual findings "shall be presumed to be correct," and

Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing

evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–361 (6th Cir. 1998),

*cert. denied*, 119 S.Ct. 2403 (1999).

{¶ 2} On December 3, 2011, appellant shoplifted from Walmart in Austintown. In
the process of apprehending appellant, Walmart's asset protection associate got
scratched on the hand. . . .
. . .

{¶ 9} . . . [At appellant's jury trial, the] state presented the testimony of Walmart's
asset protection associate (hereinafter "the employee"), an assistant manager at
Walmart, and the responding police officer. The employee testified that he was
patrolling the store in plainclothes when he saw appellant, who was not permitted
to be in the store, opening merchandise containing a box cutter. (Tr. 201–203).
Appellant loaded a blade into the cutter and put it in his pocket. (Tr. 202). He then
went to another section of the store and stuffed three rain parkas and two ponchos
into his jacket and pants. (Tr. 202, 212).

{¶ 10} The employee had already pointed appellant out to his manager, who then
took up a post at the front door of the store. (Tr. 202–203, 238). When appellant
began to exit the store with the merchandise, the manager told appellant that he
wanted to ask him some questions. (Tr. 205, 238). Appellant started to flee. The
manager tried to grab appellant's arm, but appellant was able to bat his arm away.
(Tr. 205). The employee than grabbed appellant in a bear hug in order to keep him
upright and held him against a wall for one minute. (Tr. 206, 221, 223). The
employee testified that appellant struggled with him. He said that appellant
scratched his hand in trying to pry it from his shoulders. (Tr. 206). Appellant then
stopped resisting and walked to the office to await the police.

{¶ 11} A photograph of the employee's red and flushed face was introduced to
emphasize that a struggle took place as opposed to appellant peacefully
surrendering. State's Exhibit 1. Other photographs were introduced showing the
bleeding scratches on the employee's hand. State's Exhibit 2 and 3. The employee
testified that he still had scars on his hand from the scratches. (Tr. 212). The
manager and the police officer confirmed that the employee's hand was scratched
and that he was bleeding. (Tr. 242, 261). The manager also confirmed that
appellant initially resisted and tried to get the employee's hands off of him. It was
elicited, however, that the manager did not actually see the scratching occur, and
he conceded that it was possible that the employee's hand got scratched when he
pushed appellant into the wall. (Tr. 238, 247, 250). The police officer testified

2

that he found the box cutter when he searched appellant's pocket and that appellant was belligerent. (Tr. 255–26).

{¶ 12} The defense played the video footage from the surveillance camera, which was shot from fairly far away. The defendant then decided to testify. Defense counsel disclosed that this was against his advice and that appellant was very insistent about testifying. He explained to the defendant that his prior convictions would be used against him. (Tr. 268). The defendant then testified about the three prior felonies and the five or six other theft convictions. (Tr. 271). The defendant revealed that he pled guilty in every case and that he did not take these cases to trial because he was not going to lie. (Tr. 271–272). He also testified that he has a drug problem.

{¶ 13} The defendant's version of the events is that he remained calm and did not struggle when the employee grabbed him and their momentum slammed them into the wall. (Tr. 275). He denied that he scratched the employee's hand, explaining that his arms were being held. (Tr. 278). In opening and closing, counsel pointed out that if you tackle someone against a wall with your hands around their shoulders, you are going to get scraped. (Tr. 195, 302).

*State v. Marsh*, No. 12 MA 40, 2013-Ohio-757, 2013 WL 816114, at **1-3 (Ohio Ct. App. March 1, 2013).

## B. *Procedural History*

### 1. *State Trial Court*

On December 22, 2011, the Mahoning County Grand Jury issued an indictment charging Petitioner with one count of robbery in violation of Ohio Rev. Code. § 2911.02(A)(2)(B), a second degree felony. ECF Dkt. #8-1 at 3. Petitioner entered a plea of not guilty to the charge. *Id*. at 4.

The parties engaged in plea negotiations. The state appellate court recounted:

{¶ 3} Pretrials were held on January 13 and February 22, 2012. At both pretrials and for a third time just minutes before jury selection, the state offered the same plea deal: plead guilty as charged, and the state would recommend a minimum sentence of two years. (Tr. 8). The defendant rejected the plea deal each time. When the state placed this offer on the record, appellant's court-appointed defense counsel noted that he reviewed the matter with appellant, but appellant wished to

3

proceed to trial. Defense counsel also disclosed that he showed the jury instructions to appellant. (Tr. 9). Notably, the jury instructions explained, in accordance with R.C. 2901.01(A)(3), that the physical harm inflicted or attempted in a robbery includes any injury regardless of its gravity or duration. (Tr. 316).

{¶ 4} The trial court ensured appellant was aware of the terms of the plea offer and that it was appellant's desire to reject the proposal. (Tr. 9). Counsel then argued two motions in limine that he had filed two days prior. One motion asked to exclude appellant's prior convictions from evidence if he chose to testify. It was revealed that within the past ten years, appellant had prior felony convictions involving drug trafficking, carrying a concealed weapon, and illegal processing of drug documents. He also had a number of misdemeanor theft convictions and a falsification conviction. (Tr. 10, 13). The court ruled that the state could question appellant about his prior convictions if appellant took the stand. (Tr. 18).

{¶ 5} Before calling the potential jurors down, the court stated to defense counsel, "I would suggest you have some more discussion with your client." (Tr. 28). After a brief recess, defense counsel advised the court that his client had requested new counsel. The court voiced that trial was scheduled to start. The court also said that it was aware of the work defense counsel had performed for the defendant and praised the plea proposal obtained for the defendant. (Tr. 28).

{¶ 6} The defendant stated that he had been trying to avoid seeking new counsel, that he had wanted to give counsel a chance, but he had a few reasons for wanting to terminate counsel. First, he claimed that counsel called his friend and asked if the friend would be picking appellant up for court; as appellant was in jail, appellant opined that the call to his friend made no sense. In addition, appellant said, "yesterday he spoke to me in confidence and he really convinced me that he was going to work hard on my case and try to win my case and he made me believe that he believed he was going to win the case. All of a sudden, I'm hearing a different story now. He was supposed to contact somebody to work on the case. Three strikes." (Tr. 29). Appellant said that if the court granted new counsel, he had a friend who would "possibly" retain an attorney for him if he wrote to him. (Tr. 30).

{¶ 7} Defense counsel responded to each claim. First, he stated that he did not call appellant's friend about picking appellant up as he knew appellant had been in jail since his arrest. He explained that a friend of appellant's said that he would be providing clothes to appellant to wear in court, but since that never happened, defense counsel had to provide the clothing for appellant. With regards to appellant's comment about working hard on the case, counsel stated that he told appellant, "if it goes to a jury trial, I'll give it my best." (Tr. 30). Counsel then noted that part of being a defense attorney is to make sure the client very clearly understands the risks involved. (Tr. 30–31). Counsel stated that he explained the

4

risks to appellant. (Tr. 31). As for the third comment, counsel explained that appellant wanted his friend to enlarge the footage from the surveillance camera. Counsel called the friend, but the friend said that his camcorder could only enlarge footage that he shot with the camera and not someone else's footage. (Tr. 31).

{¶ 8} The court denied appellant's motion for new counsel, voicing that defense counsel "is a very, very competent lawyer." The court stated that in reviewing the file, the motions filed, and the arguments heard, it was obvious that defense counsel did his job. The court opined that since appellant had been to prison more than once in the past, appellant was lucky to have been offered a plea wherein the state recommended a minimum sentence. "That certainly doesn't speak of somebody—of a lawyer that didn't do his job. If anything, you should be complimenting him for getting that proposal." (Tr. 32). The defendant then opined that the plea was obtained because the evidence was weak, voicing disbelief that many people go to prison for the crime he committed. (Tr. 32).

*Marsh*, 2013 WL 816114, at **1-2.

Petitioner's case proceeded to trial by a jury on February 29, 2012.  ECF Dkt. #8-1 at 6.

On March 1, 2012, the jury found him guilty as charged.  *Id*.  The next day, March 2, 2012, the

trial court sentenced Petitioner to six years' imprisonment and three years of post-release

control.  *Id*. at 7-8.

## 2.  *Direct Appeal*

Petitioner filed a timely notice of appeal.  *Id*. at 9.  Represented by new counsel, he

asserted the following assignment of error in his appellate brief:

Appellant's right to counsel under the Sixth Amendment to the U.S. Constitution was violated as a result of the ineffective assistance of his counsel, which caused the Appellant to reject a favorable plea bargain offered by the prosecution, thereby resulting in a guilty verdict and sentence to a term of years much longer than was offered by the prosecution. (Tr. 8-9, 28-33).

*Id*. at 13.  On March 1, 2013, the state appellate court affirmed Petitioner's conviction and

sentence.  *Marsh*, 2013 WL 816114; ECF Dkt. #8-1 at 43-52.

### 3. *Ohio Supreme Court*

Petitioner, pro se, filed a timely notice of appeal in the Ohio Supreme Court.  ECF Dkt.

#8-1 at 54.  In his memorandum in support of jurisdiction, he asserted the following proposition

of law:

> Appellant's right to counsel under the Sixth Amendment to the U.S. Constitution
> was violated as a result of the ineffective assistance of his counsel, which caused
> the Appellant to reject a favorable plea bargain offered by the prosecution,
> thereby resulting in a guilty verdict and sentence to a term of years much longer
> than was offered by the prosecution.

*Id*. at 73.  On June 26, 2013, the Ohio Supreme Court declined jurisdiction over Petitioner's

appeal.  *Id*. at 89.

### 4. *Rule 26(B) Application for Reopening Direct Appeal*

On May 22, 2013, Petitioner filed a timely pro se application to reopen the direct appeal

pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure in the Seventh District Court of

Appeals.  *Id*. at 90.  In his brief, he raised the following assignments of error:

1. Defendant/Appellant Michael Marsh[] was deprived of his right to
   effective assistance of appellate counsel on direct appeal[] as a result of
   appellate counsel's failure to raise claims that[:]  (1) defense counsel was
   ineffective for failing to request a jury instruction on the lesser included
   offense of "petty theft;"  and (2) on grounds where appellate counsel
   failed to raise a claim that the trial court judge should have *sua sponte*
   instructed the jury on the lesser included offense of petty theft.  Thus[,
   counsel] violated Appellant's [Sixth] and [Fourteenth] Amendment rights
   as guaranteed by the U. S. Constitution; and article I, section[s] 10 and 16
   of the Ohio Constitution.

2. Appellant's [Sixth] and [Fourteenth] Amendment right to the effective
   assistance of counsel on direct appeal[] was violated[] on grounds that
   appellate counsel failed to raise a claim on direct appeal that the
   Defendant's conviction for robbery is not supported by sufficient evidence
   [or] proof beyond a reasonable doubt, as required by the [Fifth], [Sixth]
   and [Fourteenth] Amendments to the United States Constitution, and
   article I, section[s] 10 and 16 of the Ohio Constitution.

6

*Id*. at 95, 98.  On June 19, 2013, the state appellate court denied the application.  *Id*. at 114-20.

Marsh, pro se, filed a timely notice of appeal to the Ohio Supreme Court.  *Id*. at 121.  In

his memorandum in support of jurisdiction, he presented the following propositions of law:

1.  Appellant was deprived of his right to effective assistance of appellate counsel on direct appeal as a result of appellate counsel's failure to raise claims that (1) defense counsel was ineffective for failing to request a jury instruction on the lesser included offense of petty theft; and (2) on grounds where appellate counsel failed to raise a claim that the trial court judge should have sua sponte instructed the jury on the lesser included offense of petty theft.  Appellant's [Sixth] and [Fourteenth] Amendment rights as guaranteed by the U. S. Constitution, and [article] I, [sections] 10 and 16 of the Ohio Constitution, were violated.

2.  Appellant's [Sixth] and [Fourteenth] Amendment right to the effective assistance of counsel on direct appeal was violated on grounds that appellate counsel failed to raise a claim on direct appeal that the Defendant's conviction for robbery is not supported by sufficient evidence or proof beyond a reasonable doubt, as required by the [Fifth], [Sixth] and [Fourteenth] Amendments to the United States Constitution, and [a]rticle I, [sections] 10 and 16 of the Ohio Constitution.

*Id*. at 128.  On October 23, 2013, the Ohio Supreme Court declined jurisdiction.  *Id*. at 147.

## II.  *FEDERAL HABEAS CORPUS PETITION*

Petitioner filed a  pro se § 2254 federal habeas corpus petition on October 3, 2014.  ECF

Dkt. #1.  He asserts the following ground for relief:

GROUND ONE:  Ineffective assistance of trial counsel.

Supporting Facts:  The Petitioner, Michael Marsh, was charged with second degree felony robbery in violation of Ohio Revised Code 2911.02(A)(2), which entails inflicting, attempting to inflict, or threatening to inflict physical harm on another in attempting or committing a theft offense or in fleeing immediately thereafter. The State of Ohio offered to recommend two (2) years in prison if appellant pled as charged. On the advice of his attorney he refused the offer and proceeded to a jury trial after which he was found guilty and sentenced to serve six years in prison.

In the direct appeal, appellate counsel urged that trial counsel's advice concerning

7

the plea or changes (sic) of winning at trial constituted ineffective assistance of counsel. . . .
. . .

During plea negotiations, counsel for the Petitioner instructed the Petitioner that it "would not be in his best interests if he accepted the plea offer of 'two (2) years' [from] the State because" in his opinion he felt that he "would be successful at trial."  Based on that advice the Petitioner declined the plea offer made by the State and preceded to trial on the assumption that his attorney would deliver on his stated promise that he would win before a jury. Seven times the [Petitioner's] counsel assured the [Petitioner] that if he did not take "the deal" he (counsel) would win at trial. The case proceeded to trial and the Petitioner was found guilty of second degree Robbery in violation of Ohio Revised Code 2911.02(A)(2) and was given a term of incarceration of six (6) years. The offer made by the State was initially for the [P]etitioner to serve a two[-]year term of incarceration. Had it not been for the erroneous advice from counsel to the Petitioner, that he (counsel) would have been successful at trial[,] the Petitioner would have been sentenced to a significantly less sever[sic] sentence.

*Id*. at 5-6.

On October 3, 2014, Petitioner filed a motion for an evidentiary hearing.  ECF Dkt. #4.

Respondent filed an Answer/Return of Writ on December 23, 2014.  ECF Dkt. #8.  On January 21, 2015, Petitioner filed a motion requesting that the Court issue a new order to show cause requiring Respondent to produce numerous items, including transcripts, court documents, and videotape trial exhibits, that Respondent allegedly failed to submit with her Return of Writ and send to him.  He also requested an evidentiary hearing and oral argument.  ECF Dkt. #10.  On January 28, 2015, Respondent opposed the motion for a new order to show cause.  ECF Dkt. #11.    Petitioner filed a pro se "In Limine Traverse Brief" on January 30, 2015.  ECF Dkt. #12. On July 23, 2015, the Court denied Petitioner's motions for discovery and for a new show cause order, finding that Respondent had filed all portions of the record relevant to Petitioner's habeas petition.  It also granted Petitioner additional time to file a new traverse.  ECF Dkt. #14. Petitioner, however, did not file any further pleadings with the Court.

### III. *PROCEDURAL BARRIERS TO REVIEW*

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

#### A. *Statute of Limitations*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgment became final.  28 U.S.C. § 2244(d)(1). Respondent does not challenge the timeliness of Petitioner's habeas petition.

#### B. *Exhaustion of State Remedies*

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.

9

*McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688–89 (2nd Cir. 1984)).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by:  (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031–32 (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden ... of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218–19 (1950),

overruled in part on other grounds, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.  *Procedural Default*

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman*, 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment."  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Under the first prong of *Maupin*, there must be a firmly established

11

state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991).  Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman*, 501 U.S. at 729–30; *Richey v. Mitchell*, 395 F.3d 660 at 678 (2005) (holding that "a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (holding that if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (holding that even if the issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d at 313–14. Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

12

that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004).

## IV.  *STANDARD OF REVIEW*

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion, and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed the instant § 2254 federal habeas corpus petition well after the AEDPA's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997), *cert. denied*, 522 U.S. 1112 (1998).  Under § 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was *contrary to*, or involved *an unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

Under the "contrary to" clause, a federal habeas court may grant the writ if the

13

state court arrives at a conclusion opposite to that reached by this Court on a
question of law or if the state court decides a case differently than this Court has
on a set of materially indistinguishable facts. Under the "unreasonable
application" clause, a federal habeas court may grant the writ if the state court
identifies the correct governing legal principle from this Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas

court making the 'unreasonable application' inquiry should ask whether the state court's

application of clearly established federal law was objectively unreasonable."  *Id.*  Elaborating on

the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue

the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell*, 271 F.3d 652,

655–56 (6th Cir. 2001).

The Sixth Circuit offers the following guidelines for applying the AEDPA limitations:

A.      Decisions of lower federal courts may not be considered.

B.      Only the holdings of the Supreme Court, rather than its dicta, may be
considered.

C.      The state court decision may be overturned only if:

1.       It '[applies] a rule that contradicts the governing law set forth in
[Supreme Court of the United States] cases,' [the Supreme Court
precedent must exist at the time of petitioner's direct appeal]; or

2.       the state-court decision 'confronts a set of facts that are materially
indistinguishable from a decision of [the Supreme Court] and
nevertheless arrives at a result different from [Supreme Court]
precedent'; or

3.       'the state court identifies the correct governing legal rule from
[the Supreme] Court's cases but unreasonably applies it to the facts
of the particular state prisoner's case'; or

4.     the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.     Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.     Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey*, 271 F.3d at 655–56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine*, 986 F.2d at 1514. The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996),

15

cert. denied, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore

the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast &*

*Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has

the burden of rebutting the presumption of correctness by clear and convincing evidence. 28

U.S.C. § 2254(e)(1).

### V. *ANALYSIS*

In his sole ground for relief, Petitioner argues that he was denied his Sixth Amendment

right to the effective assistance of counsel because his trial counsel caused him to reject a plea

bargain, resulting in a guilty jury verdict and a substantially longer prison sentence than the

prosecution had originally offered.  ECF Dkt. #1 at 5-6.  Specifically, he claims that his attorney

advised him seven times that "it 'would not be in his best interests'" to accept the prosecution's

offer of a two-year prison sentence in exchange for a guilty plea, because "he 'would be

successful at trial.'"  *Id*.  Petitioner asserts that counsel incorrectly informed him that the State

could not prove either that the Walmart security guard was sufficiently injured to establish

robbery, or that Petitioner actually scratched the guard.  ECF Dkt. #12 at 5-7.  He claims he

relied on counsel's evaluation of his case and rejected the plea, but the jury convicted him and

the court sentenced him to six years in prison, a much harsher sentence than the prosecution had

offered him during plea negotiations.  ECF Dkt. #1 at 6.

Petitioner raised this claim on direct appeal in state court, where it was adjudicated on the

merits.  *Marsh*, 2013 WL 816114, at **4-6.  Respondent argues that this claim lacks merit.  ECF

Dkt. #8 at 8-15.

16

The Supreme Court long has recognized that the Sixth Amendment right to the effective assistance of counsel at trial "is a bedrock principle in our justice system."  *Martinez v. Ryan*, 132 S. Ct. 1309, 1317 (2012).  *See also Gideon v. Wainwright*, 372 U.S. 335, 342-44 (1963).  This right extends to the plea-bargaining process.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012) ("the right to adequate assistance of counsel cannot be defined or enforced without taking account of the central role plea bargaining plays in securing convictions and determining sentences").

The Supreme Court announced a two-prong test for habeas claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, the petitioner must demonstrate that counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id* at 687.  Second, the petitioner must show that he was prejudiced by counsel's errors.  To do this, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In the context of pleas, a petitioner must show that

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385.

"*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional

judgment.'"  *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quoting *Strickland,* 466 U.S. at

689-90).  The Supreme Court has observed that the standards imposed by *Strickland* and §

2254(d) are both "highly deferential," so that in applying them together, "review is 'doubly' so."

*Harrington v. Richter,* 562 U.S. 86, 105 (2011).  Indeed, the Court has advised that "[w]hen a

state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel

during plea bargaining, our cases require that the federal court use a 'doubly deferential'

standard of review that gives both the state court and the defense attorney the benefit of the

doubt."  *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Pinholster*, 131 S. Ct. at 1403).

        The state appellate court, the last state court to address Petitioner's ineffective-assistance

claim, reasoned:

> {¶ 15} Appellant's sole assignment of error provides:
>
> {¶ 16} "Appellant's right to counsel under the Sixth Amendment to the U.S.
> Constitution was violated as a result of the ineffective assistance of his counsel,
> which caused the Appellant to reject a favorable plea bargain offered by the
> prosecution, thereby resulting in a guilty verdict and sentence to a term of years
> much longer than was offered by the prosecution."
>
> {¶ 17} Appellant states that the evidence against him was overwhelming and
> incontrovertible and thus it was deficient performance for counsel to advise
> appellant that the case was "possibly winnable." He urges that outcome
> determinative prejudice existed because he would have accepted the plea with the
> recommendation of a two-year sentence if counsel would not have erroneously
> caused appellant to believe that they could win at trial. Appellant posits that a
> new United States Supreme Court case is dispositive of this issue, *Lafler v.
> Cooper*, 132 S.Ct. 1376, 182 L.Ed. 398 (2012).
>
> {¶ 18} The state responds that the record does not support appellant's contentions.
> The state posits that *Lafler* is distinguishable. The state alternatively states that
> even if counsel made such a statement and even if it constituted deficient
> performance, there was no prejudice because the trial court was free to reject the
> state's recommendation. Appellant replies that the latter contention is contrary to
> *Lafler*.

{¶ 19} In *Lafler*, a favorable plea offer was reported to the client and rejected on the advice of counsel, who advised the defendant that the state could not prove intent because the victim was shot below the waist, even though the defendant shot the victim three times and missed her head once. The defendant took the case to trial and was convicted, after which he received a sentence more than three times higher than the plea offer. Notably, in an earlier communication with the trial court, the defendant had admitted guilt and expressed a willingness to accept the plea offer.

{¶ 20} In a post-conviction hearing before the state trial court, the defendant argued that his counsel's advice constituted ineffective assistance of counsel. The state court rejected his claim. The federal district court then granted the defendant habeas relief and ordered specific performance of the plea agreement. The Sixth Circuit affirmed, finding that counsel provided deficient performance by informing his client of an incorrect legal rule and finding that the defendant suffered prejudice because he lost an opportunity to plead guilty and receive the lower sentence offered.

{¶ 21} The Supreme Court began by emphasizing that the Sixth Amendment right to counsel extends to the plea bargaining process. *Id*. at 1384. If a plea bargain is offered, the defendant has the right to effective assistance of counsel in considering whether to accept it. *Id*. at 1387. Thus, the two-part *Strickland* test applies, requiring a showing of deficient performance and prejudice. *Id.* at 384–138, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 203 (1985).

{¶ 22} The defendant must show that but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence imposed would have been less severe than that actually imposed upon the defendant. *Id*. at 1385. The Court agreed with the defendant and rejected the state's position that there is no prejudice if the defendant is later convicted after a fair trial. *Id*.

{¶ 23} The Court did not, however, agree with the specific performance remedy imposed by the lower court. The Court stated that if the rejection of the plea resulted in a greater sentence, the trial court should conduct an evidentiary hearing to determine if the defendant showed a reasonable probability that but for counsel's deficient advice, he would have accepted the plea. If the showing is made, the court can exercise its discretion to determine if the defendant should receive the sentence offered in the plea, the sentence he received after trial, or something in between. *Id.* at 1389. If the plea dealt with convictions on lesser offenses, then resentencing alone may not address the injury, in which case the remedy is for the prosecution to reoffer the plea and the judge to then exercise his

19

discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed. *Id*. at 1389, 1391.1

> FN. 1  Appellant's brief seems to suggest that the second remedy would apply here. *See* Appellant's Brief at 11, citing *Lafler* at 1391. However, the plea offer appellant rejected called for him to plead guilty to the same robbery that he was eventually convicted of. His only allegation of prejudice here could be the greater sentence. Thus, it is the first remedy that would be applicable herein if we were to get that far.

{¶ 24} However, as the state points out, counsel's deficient performance was stipulated in *Lafler. Id.* at 1383, 1391. The issue of deficient performance was not before the Court and was specifically not addressed. *Id.* at 1384, 1391. In fact, the Court declared, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Id* . at 1391. Here, there is no stipulation that defense counsel said the case was "possibly winnable" as appellant now claims, and there is no stipulation that such a statement would constitute deficient performance. In fact, it is undisputed that appellant received correct legal advice in the form of the jury instructions further discussed infra. Thus, *Lafler* is in fact distinguishable from the case before us.

{¶ 25} *Lafler* is also distinguishable as it arose from a post-conviction proceeding where the defendant stated that he would have pled guilty but for counsel's advice. To the contrary, the case before us arose from the direct appeal after trial where the record does not show that the defendant would have pled guilty but for counsel's advice. In fact, the record shows appellant again rejecting the plea even after he claimed that counsel was no longer confident that they could win.

{¶ 26} Specifically, appellant claimed to the trial court on the record prior to trial that counsel previously made him believe that they could win the case but that counsel was now telling him "a different story." Defense counsel clarified that he told appellant he would give his best if the case went to trial and insisted that he advised appellant of the risks of trial. Counsel placed on the record the fact that he showed appellant the jury instructions, which provided that robbery is established by the infliction or attempted infliction of any physical harm in fleeing a theft no matter how insignificant of an injury. Counsel stated that even after showing these instructions to appellant, appellant wished to proceed.

{¶ 27} It was clear from the record that counsel thoroughly investigated the case. He filed motions in limine that discussed details of the case, he called appellant's friend to request technical assistance on appellant's behalf, and it was defense counsel who provided the state with the store's video footage. After three rejections of the plea, the trial court had counsel discuss the offer further with appellant, clearly implying that appellant would be wise to accept the plea. Counsel tried to convince appellant, but this merely resulted in appellant seeking

20

new counsel. The trial court heard all of appellant's complaints about counsel, heard counsel's responses, and did not find appellant's contentions to hold weight.

{¶ 28} Even if counsel did tell appellant the case was "possibly winnable," this would not constitute deficient performance. Such a statement is not equivalent to definitely winnable or even likely winnable. As counsel urged at trial, if a security guard decides to tackle a shoplifter against a wall and his hands get scratched against the wall, a jury may be convinced that it was not the defendant who inflicted the physical harm. That is, the jury could have been convinced that appellant did not struggle and that the employee's hand scratch was not inflicted by appellant but resulted from the momentum of slamming a person's back into a cement wall while holding that person's shoulders. And, "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Id.* at 1391.

{¶ 29} In any event, appellant was advised prior to trial that his case was not strong and that acceptance of the plea was advisable. Appellant essentially admitted on the record that counsel recently advised him that a trial was not likely to end well. The plea offer still existed at that time. The trial court advised him how favorable the plea was under the circumstances of the case. Even after all of this, appellant still rejected the plea, insisted that the proof against him was weak, and even testified that the employee looked "high" in the photograph (which the state introduced to show the employee's face after the struggle). Thus, he cannot say that he would have accepted the deal if counsel had not allegedly stated at one time that the case was possibly winnable. In accordance, this assignment of error is overruled.

*Marsh*, 2013 WL 816114, at **4-6.

Petitioner advances four arguments to support his claim that the state appellate court's

decision denying his ineffective-assistance claim was unreasonable.[2] First, he asserts that the

---

[2] Petitioner appears to assert two additional grounds of ineffective assistance in his "In Limine Traverse Brief": that his trial counsel failed to request a jury verdict on the lesser included offense of shoplifting, and that counsel improperly stated in closing argument that the security guard was scratched. ECF Dkt. #12 at 8 n.5. The Court will not address these claims. District courts properly decline to address grounds for relief first raised in a traverse rather than in the habeas petition. *See, e.g., Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). Furthermore, even if Petitioner had properly raised the claims here, the Court would not address them, as they were never presented to any state court and are therefore procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

state court's decision that his trial counsel did not perform deficiently was premised on the incorrect factual finding that counsel "advised [him] prior to trial that his case was not strong and that acceptance of the plea was advisable."  *Id*. at *6.  Petitioner claims that, to the contrary, counsel made an "absolute promise of victory."  ECF Dkt. #12 at 5.  He argues that he never said his attorney told him the trial was "possibly winnable," a claim the state court repeatedly attributed to him.  *Id*. at 9.  Rather,  as conclusive evidence that counsel told him they would definitely win, he cites to his statement to the trial court that "yesterday [counsel] spoke to me in confidence and he really convinced me that he was going to work on my case and try to win my case and he made me believe that he believed he was going to win the case."  *Id*. (quoting ECF Dkt. #9-1 at 26).

The record, however, fully supports the state court's finding.  As the appellate court noted, after Petitioner told the trial judge that his counsel had informed him "he believed he was going to win the case," Petitioner continued, "All of a sudden, I'm hearing a different story now."  ECF Dkt. #9-1 at 26.  Defense counsel then explained to the court, as the state court accurately reported:

> As to his other comments about, you know, working hard with – working hard on the case, I told him if it goes to a jury trial, I'll give it my best.  But on the other hand, I think part of being a defense attorney is you gotta – you know, you gotta make sure the client very clearly understands the risks you're taking.  And that's what I explained . . . to him on Monday and I explained it to him today.

*Id*. at 27-28.  Furthermore, Petitioner concedes that counsel gave him the jury instructions, which clearly stated the law relating to robbery, including that "physical harm" means "any injury, . . . regardless of its gravity or duration."  *See* ECF Dkt. # 12 at 7 n.4; ECF Dkt. #9-1 at 6; ECF Dkt. #9-2 at 88.  Thus, there is nothing in the record to support Petitioner's assertion that counsel

22

promised him he would win at trial.[3]

More significantly, Petitioner points to nothing in the record to support his assertion that his attorney advised him to reject the plea deal.  Without such evidence, his claim fails.  As the state court correctly reasoned, even if counsel had represented to Petitioner that he had some chance of winning, counsel's performance would not have been deficient.  The Supreme Court has stated that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."  *Lafler*, 132 S. Ct. at 1391.  In fact, Petitioner's counsel mounted a valid defense:  that Petitioner did not injure the security guard; the guard's hand was scratched when he pushed Petitioner against the wall.  The state court reasonably concluded, therefore, that Petitioner's counsel did not perform deficiently during his plea negotiations, as he fully advised Petitioner of the weaknesses of his case and the risks of going to trial, and that it would not have constituted deficient performance even if counsel had found some merit in Petitioner's defense and communicated that to him.

Second, Petitioner argues that it is "unrefuted, on the record" that he relied on his counsel's assessment of his case in rejecting the prosecution's plea offer.  ECF Dkt. #12 at 11.  The record supports the state court's conclusion, however, that, ultimately, it was Petitioner who decided to reject the plea deal.  As the state court observed, Petitioner repeatedly rejected the prosecution's plea offer, even after the trial court ordered defense counsel to confer with him again, implying that he should accept the deal, and after he heard his counsel's remarks to the court about the risks involved in going to trial.  When the court overruled Petitioner's motion for new counsel, he told Petitioner his counsel was "a very, very competent lawyer," and "[i]f

---

[3] As to the "possibly winnable" phrase, the Court notes that Petitioner himself used the term in his appellate brief on direct appeal.  *See* ECF Dkt. #8-1 at 22.

anything, [he] should be complimenting" his attorney for obtaining an offer of the minimum sentence for his crime.  *Id*. at 29.  Petitioner responded, "I believe that's because the case is weak."  The court asked him to repeat himself and Petitioner stated, "I believe that's because the case is weak, Your Honor.  I mean, how many people do you see going down the road for charges that I have right now for the crime that I committed?"  *Id*.  The court then concluded the hearing and called for the jury.  *Id*. at 30.  In the end, therefore, Petitioner clearly indicated that despite being told otherwise, *he* believed "the case [was] weak" and wanted to proceed to trial. ECF Dkt. #9-1 at 29.  The Supreme Court has observed that a lawyer must not "override his client's desire . . . to plead not guilty."  *Brookhart v. Janis*, 384 U.S. 1, 7-8 (1966).  A defendant has the "'ultimate authority'" to decide whether to "exercise or waiv[e] . . .  basic trial rights," such a whether to plead guilty.  *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).  *See also Titlow*, 134 S. Ct. at 16-17 (holding it was not ineffective assistance under *Strickland* for an attorney to advise his client to withdraw his guilty plea after the client proclaimed his innocence).

Third, Petitioner asserts that the state court unreasonably applied the law in determining that his counsel did not perform deficiently.  ECF Dkt. #12 at 11-13.  He claims the state court erred in applying the Supreme Court decision in *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), and instead should have applied the Sixth Circuit's decision in that case, *Cooper v. Lafler*, 376 Fed. Appx. 563 (6th Cir. 2010).  This argument is not well-taken.  In its decision in *Lafler*, the Supreme Court vacated the judgment of the Sixth Circuit, and that decision is no longer good law.  *Lafler*, 132 S. Ct. at 1391.  Moreover, the Supreme Court has made it clear that only its own holdings can form the basis for habeas relief under § 2254(d)(1).  *See, e.g., White v.*

*Woodall*, 134 S. Ct. 1697, 1702 (2014) ("clearly established Federal law" includes "only the holdings, as opposed to the dicta, of Supreme Court decisions") (internal quotation marks and citations omitted).

Fourth, Petitioner claims that he was prejudiced by his counsel's advice and his reliance upon it.  ECF Dkt. #12 at 13-14.  He argues that he "has shown a reasonable probability that the trial court would have accepted the plea agreement and imposed a prison term of less than [six] years, a different outcome than what occurred."  *Id*. at 13.  Under *Strickland*, however, if a petitioner fails to prove either deficiency or prejudice, his ineffective-assistance claim will fail. *Strickland,* 466 U.S. at 687.  As explained above, the state court's decision that Petitioner's counsel was not deficient was reasonable, and this Court need not address *Strickland*'s prejudice prong.

Accordingly, the state appellate court's decision denying Petitioner's ineffective-assistance claim was not based on an unreasonable determination of the facts, nor was it contrary to, or an unreasonable application of, *Strickland* or its progeny.  The undersigned, therefore, recommends that the Court find no merit to Petitioner's sole ground for relief.

## VI.  *CONCLUSION AND RECOMMENDATION*

As explained above, the undersigned recommends that the Court dismiss Petitioner's federal habeas corpus petition in its entirety with prejudice.


Date:   September 20, 2016                                    */s/George J. Limbert*
                                                                George J. Limbert
                                                                United States Magistrate Judge